NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0352n.06

No. 25-3947

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 06, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| NEWTON SCOTT MULAMA, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| TODD W. BLANCHE, Acting U.S. Attorney General, | ) | |
| | ) | OPINION |
| Respondent. | ) | |
| | ) | |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Newton Mulama came to the United States to attend graduate school, but he illegally remained here after he graduated. When immigration authorities sought to remove him to Kenya, he applied for cancellation of removal and asked the government at least to allow him to depart voluntarily. The Board of Immigration Appeals refused to cancel Mulama's removal because he did not prove that the removal would cause "exceptional and extremely unusual hardship" to his children. 8 U.S.C. § 1229b(b)(1)(D). The Board also rejected his request to depart voluntarily on the ground that he did not submit proof that he posted the required bond.

Mulama now disputes both conclusions. He claims that the Board committed several legal errors when deciding that his children would not suffer the required hardship, and he challenges its ultimate lack-of-hardship finding. He also asserts that he introduced his bond receipt into the record, contrary to what the Board said when denying his request for voluntary departure. But the

Board correctly interpreted the hardship requirement and reasonably applied it to Mulama. So we must reject his request for cancellation of removal. That said, the Attorney General asks us to remand to the Board so that it may reassess whether he qualifies for voluntary departure. We will take that course without reaching any issues on the merits. We thus deny his petition in part, grant it in part, and remand for the Board to reconsider whether Mulama may seek voluntary departure.

I

Mulama was born in Kenya in 1974. He became an engineer in that country. But he wanted to change careers. So he came to the United States in 2007 to attend business school on a student visa. Two years later, he obtained his M.B.A. from Saginaw Valley State University. Mulama overstayed his visa and has remained in Michigan ever since. He eventually obtained a job as the controller for the Sheridan Community Hospital in Sheridan, Michigan. He has performed well in this role and made about $83,000 a year.

Since his move to the United States, Mulama has fathered three children: one daughter (born in 2017) and twin sons (born in 2019). Mulama's daughter lives in Detroit with her mother, who had "full custody of her" at the time of his immigration hearing in 2022. Admin. R. (A.R.) 180. At that point, Mulama had no formal child-support obligations for his daughter. But he saw her every other weekend and on some holidays. He also sometimes paid for her clothes and food. Mulama described his daughter as "borderline autistic." A.R. 179. After the immigration hearing, doctors diagnosed her with autism. The State of Michigan also formally recognized Mulama as her father. He agreed to pay $700 a month in child support and to add her to his health insurance. But he kept a similarly limited visitation schedule.

In contrast, Mulama has always had joint custody of his twin sons. In 2018, he married their mother (who has two other children). But the couple divorced a few years later.

Their custody agreement gives Mulama and his ex-wife equal time with the boys. Yet Mulama cares for them more than his assigned time because their mother's job as her company's director of operations regularly requires her to travel. This job pays her a salary of over $100,000, and she routinely receives sizeable bonuses (in one year, her bonus increased her total income to $350,000). Mulama thus does not have to pay child support to his ex-wife. At the same time, he shoulders all the typical parenting duties when he cares for his sons. He gives the boys shelter, food, education, entertainment, and emotional support. They also regularly attend church together. And while the boys are healthy, Mulama has put them on his healthcare plan. All told, Mulama has a strong relationship with his sons.

In 2014, immigration authorities issued Mulama a notice to appear that charged him with being deportable for overstaying his visa. Mulama admitted these allegations. But he applied for cancellation of removal or voluntary departure in the alternative. In 2022, an immigration judge held a removal hearing at which Mulama testified. His cancellation-of-removal application required him to show that his removal to Kenya would cause "exceptional and extremely unusual hardship" to his children. 8 U.S.C. § 1229b(b)(1)(D). To show this hardship, Mulama discussed the harm that his removal would cause. He pointed out that Kenya "is not a signatory to the Hague Convention" (which regulates child abduction), so his children's mothers likely would not permit them to visit him. A.R. 183, 185. Mulama also suggested that Kenya has close to a 40% unemployment rate and that he might not find a job in a city like Nairobi. So he likely could not support his children financially from the country. And if he had to live with his father in a remote part of Kenya, he would lack internet access. As a result, he might have limited means to communicate with his children.

The immigration judge held that this testimony (even if true) failed to establish that Mulama's removal to Kenya would cause the required hardship to his children. The judge reasoned that the hardship concerns were "financial and primarily emotional." A.R. 117. As for the financial concerns, however, the mother of Mulama's sons had "substantial income," so they would not "end up impoverished" without him. A.R. 121. And his daughter's mother had "full custody" of her for years, so his departure would cause her little financial hardship. *Id.* On the other hand, the judge found the "emotional part" of things the "most difficult" because Mulama's children wanted him in their lives. A.R. 121–22. But the judge recognized that this emotional harm occurred in most removal proceedings. So, when considering all the circumstances in the "aggregate," the judge held that Mulama's removal would not cause "exceptional and extremely unusual" hardship to his children. A.R. 122–23. That said, the judge granted Mulama voluntary departure to facilitate his ability to visit his children by obtaining a visa in the future. It conditioned this grant on Mulama paying "a $500 voluntary departure bond within" five days. A.R. 124. The record suggests that he timely paid the bond. A.R. 111.

Mulama appealed the denial of his cancellation-of-removal application to the Board of Immigration Appeals. While his appeal remained pending there, he also filed a motion to remand for the immigration judge to reconsider the lack-of-hardship finding. Mulama based this motion on events that occurred after his hearing. Among other developments, doctors had diagnosed his daughter with autism, he had obtained formal custody of her, and he had agreed to pay child support and put her on his healthcare plan.

Despite these developments, the Board rejected Mulama's claims. It affirmed the denial of cancellation of removal because "the cumulative hardship" that his three children would suffer did not rise to the required level. A.R. 4. It agreed with the immigration judge that the mother of

Mulama's sons could care for them on her own and that the emotional harm from their father's removal was an expected injury from most removals. And although his daughter suffered from autism, her mother had been her "primary caregiver" and would continue to provide proper support. A.R. 4. The Board also denied Mulama's motion to remand because the "new evidence" did not "materially change the level of hardship" to his daughter. A.R. 5. It reasoned that she would suffer "some economic detriment" because she would no longer have his health insurance or child-support payments. *Id.* But it described this financial burden as the "normal result" of any removal. *Id.* According to the Board, her autism diagnosis also did not change things because she would continue to obtain treatment and special education for this condition. Lastly, the Board refused to reinstate the immigration judge's grant of voluntary departure. It saw no "proof" in the record that Mulama had paid the required bond. *Id.* at 5–6.

II

Mulama makes four arguments in his petition for review. He claims that the executive branch's "bias" prohibited him from receiving a fair hearing. He challenges the Board's holding that his children would not suffer the required hardship. He says that, at the least, the Board should have remanded for the immigration judge to consider his new evidence. And he asserts that the Board should have allowed him to voluntarily depart. We reject all but the last of these arguments.

A. Bias

Mulama first argues that the executive branch's alleged bias against immigrants in removal proceedings violates the Due Process Clause. He bases this due-process claim on statements by the Departments of Justice and Homeland Security referring to immigration judges as "deportation" judges. Petitioner's Br. 23. He also bases the claim on an agency flyer that referred to immigrants in this country unlawfully as "illegal aliens" and that encouraged them to "self-

5

deport." *Id.* at 25 (citing A.R. 832). And he bases the claim on a purported decision to fire many immigration judges "without cause or explanation." *Id.* at 24. As for his remedy, Mulama asserts that we have the power to transfer this case to a district court for fact finding on his due-process claim. *Id.* at 19–22 (citing 8 U.S.C. § 1252(a); 28 U.S.C. § 2347(b)(3)); *see Khalil v. President*, 164 F.4th 259, 279–81 (3d Cir. 2026) (per curiam).

We need not reach these arguments. Instead, we can reject Mulama's due-process claim for a procedural reason: he did not exhaust it in his removal proceedings. We "may review a final order of removal only if" an "alien has exhausted all administrative remedies available to the alien as of right[.]" 8 U.S.C. § 1252(d)(1). This text requires immigrants to first raise issues in the administrative process before they pursue them in court. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 424–25 (2023); *Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021). While our court has noted that a "due process challenge generally does not require exhaustion," we have added that immigrants must exhaust due-process claims alleging that "agency bias" affected an immigrant's removal proceedings. *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024) (first quoting *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); then quoting *Tomaszczuk v. Whitaker*, 909 F.3d 159, 167 (6th Cir. 2019)); *see Singh*, 984 F.3d at 1155–56.

This law forecloses Mulama's due-process claim. He did not raise any bias allegations before the immigration judge or the Board. He instead argues that he did not need to exhaust this claim because "the very agency" that he accuses of bias could not engage in "[a]dequate fact finding" about its lack of "impartiality." Petitioner's Br. 25. But he cites no cases to support this statement. The lack of support is unsurprising. Our cases have rejected any "bias" exception to exhaustion. *See Mazariegos-Rodas*, 122 F.4th at 664. Nor is it uncommon for adjudicative bodies to resolve claims that they are biased. For example, district courts must consider whether their

"personal bias" requires them to recuse. 28 U.S.C. § 455(b)(1). And although exhaustion does not limit our jurisdiction, we must enforce the defense when the government raises it. *See Herrera v. Bondi*, 162 F.4th 617, 621 (6th Cir. 2025). Because the government has raised exhaustion here, we reject Mulama's due-process claim on this ground alone.

## B. Hardship

Mulama next challenges the Board's conclusion that he failed to establish the hardship required for cancellation of removal. The Attorney General has discretion to "cancel removal" of immigrants who are in this country unlawfully if the immigrants can satisfy four eligibility factors. 8 U.S.C. § 1229b(b)(1). Mulama failed to meet only one of these factors: that he prove that his "removal would result in exceptional and extremely unusual hardship to" his U.S. citizen children. *Id.* § 1229(b)(1)(D). The adjectives in front of the word "hardship" in this provision demonstrate that it "sets a demanding standard" for immigrants who seek to avoid removal based on the difficulties that it would cause their relatives. *Nwosu v. Blanche*, 177 F.4th 732, 739 (6th Cir. 2026). The "[o]rdinary" hardships that accompany every removal do not suffice. *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). Rather, an immigrant's relatives must suffer an "extremely rare" type of hardship. *Id.*; *see In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001). To decide whether an immigrant has met this standard, the Board must consider the totality of the relative's circumstances. *Nwosu*, 177 F.4th at 739. These circumstances can include such things as "the relative's economic situation, health conditions, and educational opportunities." *Id.*; *see Baltazar Us v. Blanche*, 174 F.4th 509, 512–13 (6th Cir. 2026).

The nature of our review of the Board's hardship determination depends on the type of question that an immigrant raises. We evaluate legal questions about the meaning of the hardship provision de novo. *See Moctezuma-Reyes*, 124 F.4th at 420–22. But we lack jurisdiction to

second-guess an immigration judge's findings of historical fact about an immigrant's circumstances. *See Wilkinson v. Garland*, 601 U.S. 209, 222 (2024); 8 U.S.C. § 1252(a)(2)(B), (D). And although we do have jurisdiction to review the Board's application of the statute's general hardship standard to an immigrant's unique facts, we must defer to the Board's resolution of this mixed question of law and fact. *See Wilkinson*, 601 U.S. at 222, 225. We will uphold the ultimate lack-of-hardship finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Baltazar Us*, 174 F.4th at 513 (quoting 8 U.S.C. § 1252(b)(4)(B)).

When evaluating the Board's decision in Mulama's case against these standards, we see no error. To start, the Board correctly identified the governing law. It recognized that it must evaluate the "cumulative hardship" to Mulama's "three children" if he left for Kenya. A.R. 4; *see Nwosu*, 177 F.4th at 739. And it recognized that Mulama must identify a hardship beyond that which "would be expected" from any removal of a close relative. A.R. 4; *see Moctezuma-Reyes*, 124 F.4th at 422. Next, the Board reasonably applied these legal rules to Mulama's facts. *See Baltazar Us*, 174 F.4th at 513 (quoting 8 U.S.C. § 1252(b)(4)(B)). Mulama's sons would lose their father's financial support, but their mother earned a substantial income. And Mulama had not supported his daughter economically for most of her young life. Likewise, the Board did not minimize the emotional loss that Mulama's children would suffer. But it held that this loss was "an unfortunate consequence of removal in many cases." A.R. 4; *cf. Bonilla-Cruz v. Bondi*, 2025 WL 488765, at *4 (6th Cir. Feb. 13, 2025). Because a "reasonable adjudicator" could reach these conclusions, we must uphold the Board's determination. 8 U.S.C. § 1252(b)(4)(B).

Mulama's responses lack merit. He claims that the Board committed three legal errors. *First*, he argues that the Board has systematically "been using the wrong" legal standard to evaluate hardship claims. Petitioner's Br. 29. To justify this far-reaching argument, he relies on legislative

8

history. According to Mulama, a congressional report shows that any hardship exceeding the "increased expenses" that a relative would incur to visit a removed immigrant would satisfy the hardship standard. *Id.* at 28. But this lax test conflicts with the unambiguous text. The statute does not require more-than-de-minimis hardship. It requires "exceptional and extremely unusual hardship[.]" 8 U.S.C. § 1229(b)(1)(D). And when a statute has an unambiguous meaning, we must apply it as written no matter what the legislative history says. *See State Farm Fire and Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 36–37 (2016). Besides, our precedent has already held that the Board's longstanding reading "squares" with our own: an immigrant must identify "extremely rare" hardship. *Moctezuma-Reyes*, 124 F.4th at 422. We must follow this binding authority. *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019).

*Second*, Mulama argues that the Board legally erred because it compared his children's hardships only with the average hardship that arises in the *subset* of removals involving adult immigrants who leave behind young children. He asserts instead that the hardship standard requires the Board to compare the hardship in his case with the average hardship from *all* removals (including, for example, the removal of "adult children of lawful permanent residents"). Petitioner's Br. 30. Yet, as we have explained when rejecting a similar claim, the Board has made no such mistake. *See Orta Martinez v. Bondi*, 2026 WL 208869, at *5–6 (6th Cir. Jan. 27, 2026) (per curiam). None of its decisions limits the hardship inquiry in the way that Mulama identifies. To the contrary, the Board has recognized (and we have agreed) that the hardship must go "'substantially' beyond the ordinary hardship that would be expected" in any removal case. *Monreal-Aguinaga*, 23 I. & N. Dec. at 62 (citation omitted); *Moctezuma-Reyes*, 124 F.4th at 422. So courts may consider the young "age" of an immigrant's relatives as one factor to *support* the finding that an immigrant has shown the required hardship. *Monreal-Aguinaga*, 23 I. & N. Dec.

at 63. The problem for Mulama is that, despite his children's age, he still has not shown that they would suffer "extremely rare" hardship. *Moctezuma-Reyes*, 124 F.4th at 422.

*Third*, Mulama argues that the Board legally erred because it failed to consider the hardship to all his children "in the aggregate." Petitioner's Br. 33. "We have repeatedly rejected" this failure-to-aggregate argument when the Board's opinion showed that it considered the evidence cumulatively. *Diaz-Roblero v. Garland*, 2024 WL 3596873, at *2 (6th Cir. July 31, 2024) (citing cases); *see also Mejia Perez v. Blanche*, 2026 WL 2033121, at *2 (6th Cir. July 14, 2026); *Muela v. Blanche*, 2026 WL 1847505, at *2 (6th Cir. June 26, 2026); *Martinez-Garcia v. Blanche*, 2026 WL 1383332, at *4 (6th Cir. May 18, 2026); *Baltazar Us*, 174 F.4th at 514–15; *Hernandez v. Bondi*, 2025 WL 3541837, at *2 (6th Cir. Dec. 10, 2025); *Pablo-Ventura v. Bondi*, 2025 WL 3459588, at *3 (6th Cir. Dec. 2, 2025); *Canaca Rodriguez v. Bondi*, 2025 WL 3034752, at *4 (6th Cir. Oct. 30, 2025). The argument fares no better in this case. The Board explicitly said that it had "[c]onsider[ed] the cumulative hardship to [Mulama's] three children" when denying relief. A.R. 4. Mulama concedes as much. But he says this "conclusory statement" does not suffice because the Board should have given details about why his children's hardships fell short when considered collectively. Petitioner's Br. 33. But "[t]hat is not the law." *Muela*, 2026 WL 1847505, at *2. We do not impose "opinion-writing" standards on the Board. *See Palucho v. Garland*, 49 F.4th 532, 539 (6th Cir. 2022) (citation omitted). And here, the Board identified the relevant hardships and explained why they did not exceed the ordinary hardships that accompany most removals. It did not need to say more. *Muela*, 2026 WL 1847505, at *2.

Apart from these three legal errors, Mulama also challenges the Board's ultimate finding that his children's circumstances did not rise to the required level of hardship. He alleges that the immigration judge's finding that his children "are happy, healthy, well-adjusted, and well-cared

10

for" "increases the hardship" to them from his removal. Petitioner's Br. 35. Yet he overlooks that the immigration judge also found that the children's mothers would *continue* to take "well care of" them (both financially and emotionally) even after he departs. A.R. 121. To put things in perspective, we have upheld the Board's conclusion that an immigrant's children would not suffer extremely rare hardship because they could seek "public assistance" from the government. *Bonilla-Cruz*, 2025 WL 488765, at *4. So it is hard to see how continued care from financially stable and loving mothers (one of whom previously made some $350,000 in a year) would establish that hardship. At the least, a "reasonable adjudicator" could conclude that Mulama had not met this standard. 8 U.S.C. § 1252(b)(4)(B). We thus must deny relief.

## C. Motion to Remand

Mulama also argues the Board should have remanded his case back to the immigration judge to consider new evidence about the hardship his daughter would face from his removal. The Board generally evaluates a motion to remand to an immigration judge using the same standards that it applies to a motion to reopen completed immigration proceedings. *See Akrawi v. Garland*, 2023 WL 2293532, at *9 (6th Cir. Mar. 1, 2023) (citing *Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009)). Those standards require (among other things) that an immigrant present new "evidence" that "is material" to the relief that the immigrant seeks. 8 C.F.R. § 1003.2(c)(1). The Board has defined "material" evidence in this context to mean evidence that "would likely change the result in the case." *Sustaita-Lopez v. Garland*, 2024 WL 509619, at *4 (6th Cir. Feb. 9, 2024) (quoting *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 320–21 (6th Cir. 2018)); *see Yousif v. Garland*, 53 F.4th 928, 936 (6th Cir. 2022). We review the Board's conclusion that an immigrant has not met this standard for an abuse of discretion. *See Akrawi*, 2023 WL 2293532, at *9; *see also Yousif*, 53 F.4th at 936.

11

This deferential standard forecloses Mulama's claim. The Board reasonably found that Mulama's new evidence would not "change" the fact that he failed to prove the required hardship. *Sustaita-Lopez*, 2024 WL 509619, at *4 (citation omitted). Although he entered a custody agreement for his daughter, his visitation schedule remained the same: he would see her only every other weekend and on some holidays. And while a doctor had formally diagnosed her with autism, the diagnosis showed that she did not have any "language" or "intellectual" impairments. A.R. 5 (citation omitted). His daughter also would continue to receive proper care for this condition. Lastly, while his daughter would lose his recently agreed-to child support, she had lived without that additional financial aid for most of her life.

In response, Mulama claims that the Board did not identify its "rationale" for denying his requested remand. Petitioner's Br. 39 (quoting *Garcia v. Bondi*, 135 F.4th 1, 8 (1st Cir. 2025)). But the Board left no doubt why this new evidence did not move the needle: because it was largely cumulative to evidence that the immigration judge had already credited but found insufficient. In that respect, Mulama is mistaken to suggest that the immigration judge expressed "concerns" that he had not corroborated his claims about his daughter's autism. *Id.* at 40. The immigration judge recognized that Mulama could not get access to her medical records because he did not have custody of her. Yet the judge did not find the lack of records a "major consideration" in its analysis. A.R. 119. He assumed that Mulama's daughter had autism but found that this condition did not change things because she would still be "well care[d]" for even if Mulama returned to Kenya. A.R. 121. If anything, the new evidence confirmed these findings. So the Board did not abuse its discretion by concluding that this evidence did not change the hardship calculus.

D. Voluntary Departure

Mulama lastly asserts that the Board should have at least reinstated the immigration judge's order allowing him to depart voluntarily. Immigration judges may permit immigrants "voluntarily to depart" (rather than face a removal order) if they meet several statutory conditions. 8 U.S.C. § 1229c(b)(1); *see Pastor-Hernandez v. Bondi*, 155 F.4th 839, 842 (6th Cir. 2025). And the Attorney General may add additional regulatory conditions that "limit eligibility" for voluntary departure on top of the statutory ones. 8 U.S.C. § 1229c(e). One of these regulatory conditions requires immigrants "to post a voluntary departure bond" of at least $500 within five days of an immigration judge's order granting this relief. 8 C.F.R. § 1240.26(c)(3)(i). And if immigrants appeal to the Board, they must introduce "sufficient proof" that they "posted the required voluntary departure bond" before the Board will "reinstate the period of voluntary departure" after it completes its review. *Id.* § 1240.26(c)(3)(ii). The Board in this case refused to reinstate this voluntary-departure period because it did not believe that Mulama introduced "timely proof that the bond had been posted." A.R. 5. Mulama challenges this conclusion by pointing to record evidence showing that he timely filed the bond receipt with the Board. A.R. 109–12.

His argument raises an initial jurisdictional question. We generally lack jurisdiction to review the denial of a motion seeking voluntary departure. *See Pastor-Hernandez*, 155 F.4th at 842; 8 U.S.C. § 1229c(f). But we may review "questions of law" (including mixed questions about "whether certain facts satisfy a legal standard") that the Board resolves when denying voluntary departure. 8 U.S.C. § 1252(a)(2)(D); *Pastor-Hernandez*, 155 F.4th at 842. This jurisdictional safe harbor, though, does not allow us to review the resolution of any purely factual questions embedded in the denial of relief. *See Pastor-Hernandez*, 155 F.4th at 843.

Under this dichotomy, it is not obvious that Mulama's specific challenge falls within our jurisdiction. One could read the Board's order as finding *as a historical fact* that Mulama presented no "proof" that he posted a bond. A.R. 5. And just because the bond receipt in the record makes that factual finding dubious (to say the least), we still do not have jurisdiction to reevaluate it. The ban on our jurisdiction over factual findings does not disappear when we think the factual findings are wrong. *Cf. Meza-Rios v. Holder*, 512 F. App'x 749, 749–50 (10th Cir. 2013); *Trindade v. U.S. Att'y Gen.*, 458 F. App'x 862, 863 (11th Cir. 2012) (per curiam). Conversely, perhaps one could read the Board's order as answering a mixed question: Did the bond receipt qualify as "sufficient proof" that Mulama posted the bond within the meaning of the regulation that requires him to present this proof? 8 C.F.R. § 1240.26(c)(3)(ii). We may well have jurisdiction over this question "whether certain facts" (the bond receipt) "satisfy a legal standard" (the sufficient-proof regulatory standard). *Pastor-Hernandez*, 155 F.4th at 842.

In the end, we need not wade into this debate. Apart from Mulama's arguments, the Attorney General voluntarily asks us to "remand" the final order of removal (without considering the merits) so that the Board may reevaluate Mulama's eligibility for voluntary departure. Respondent's Br. 2 n.1. Courts "have fairly freely issued remands when an agency requests a voluntary remand" to take further action, at least when the petitioner does not oppose the remand. *Amezola-Garcia v. Lynch*, 846 F.3d 135, 143 (6th Cir. 2016); *see Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 386–87 (D.C. Cir. 2017); *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028–30 (Fed. Cir. 2001). We see no jurisdictional obstacle to this course. We have jurisdiction over the Board's "final order of removal" and we may consider some aspects of the Board's denial of voluntary departure. 8 U.S.C. § 1252(a)(1); *see Pastor-Hernandez*, 155 F.4th at 842. In the past, then, we have granted an agency request for a voluntary remand—even when the petitioner

14

seemingly raised a fact-bound question about the denial of voluntary departure. *See Amezola-Garcia*, 846 F.3d at 143; *see also Solis-Nolasco v. Holder*, 533 F. App'x 601, 605 (6th Cir. 2013) (per curiam). Bound by this precedent, we take the same approach in this case.

We deny the petition for review in part, grant it in part, and remand to the agency for proceedings consistent with this opinion.